UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CENTER FOR TRANSITIONAL ) <br> LIGHT, LLC, ) <br>    *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> ADVANCED BEHAVIORAL HEALTH, ) <br> INC., STATE OF CONNECTICUT, ) <br> DEPARTMENT OF MENTAL HEALTH ) <br> AND ADDICTION SERVICES, and ) <br> STATE OF CONNECTICUT, ) <br> DEPARTMENT OF SOCIAL SERVICES ) <br>    *Defendants*. ) | 3:20-CV-01362 (KAD) <br><br><br><br><br><br> MARCH 11, 2021 |

**MEMORANDUM OF DECISION**
**RE: STATE AGENCY DEFENDANTS' JOINT MOTION TO DISMISS, ECF NO. 29**

Kari A. Dooley, United States District Judge:

This action arises out of the manner by which the Connecticut Department of Mental Health and Addiction Services ("CTDMHAS") and the Connecticut Department of Social Services ("CTDSS") (collectively the "State Agency Defendants") administer the State of Connecticut Mental Health Waiver/Money Follows the Person (W.I.S.E.) Program (the "Waiver Program"), a program which, *inter alia,* provides in-home health care services to eligible participants. Plaintiff Center for Transitional Living, LLC ("CTL"), a provider of such services, brings claims against the State Agency Defendants as well as Advanced Behavioral Health ("ABH"), the entity with which the State Agency Defendants contracted to coordinate the provision of services. Plaintiff alleges discriminatory referral practices in violation of 42 U.S.C. §§ 1981 and 1983 (Counts I and II), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* (Count III), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* (Count IV). Pending before the Court is the State Agency Defendants' motion to dismiss for lack of subject matter

jurisdiction and motion to stay discovery pending the resolution of the motion to dismiss. The motion to dismiss was fully briefed as of January 28, 2021.[1] For the reasons that follow, the motion to dismiss is granted and the motion to stay is moot.

**Allegations**

The State Agency Defendants are responsible for administering the Waiver Program as authorized by Section 1915(c) of the Social Security Act. (Compl. ¶ 10.) The Waiver Program allows the State of Connecticut to provide home and community-based services to Medicaid beneficiaries, helping those individuals avoid institutional care. (Compl. ¶ 11.) ABH contracted with the State Agency Defendants to be the sole Connecticut Medicaid Billing Provider and fiscal intermediary for the program. (Compl. ¶¶ 12, 13.) Plaintiff alleges that "[a]t all times relevant hereto, ABH acted as the agent of CTDMHAS and CTDSS in its administration of the Waiver Program." (Compl. ¶ 14.)

CTL is a minority-owned home care agency that provides medical care and assistance to individuals living at home. (Compl. ¶ 9.) In May 2013, CTL completed a Waiver Program Credentials Application to participate in the Waiver Program and thereby be eligible to receive Medicaid funds. (Compl. ¶ 15.) Plaintiff alleges that DMHAS reviewed the application but that ABH credentialed CTL for specific services. (Compl. ¶ 16.) On or about May 16, 2013, CTL entered an agreement with ABH, in which CTL would provide services under the Waiver Program to participants referred by ABH. (Compl. ¶ 17.) The agreement provided that ABH would facilitate

---

[1] No party requested, in accordance with D. Conn. L. Civ. R. 7(a), oral arguments on this motion. The Court notes that CTL nonetheless may have desired such arguments, based on a statement in its memorandum opposing the State Agency Defendants' motion to stay discovery. (Pl.'s Mem. at 5, ECF No. 35.) Though this Court's general policy is to grant oral arguments, CTL conceded that three of the four counts are jurisdictionally barred by the Eleventh Amendment. Therefore, the Court did not believe that granting oral arguments in this instance would be beneficial.

payment for the Waiver Program services provided through the State Medicaid program, allegedly under the supervision of CTDMHAS and CTDSS. (Compl. ¶ 18.)

CTL claims that since at least September 22, 2017, ABH has engaged in discriminatory referral practices and that these practices have deprived CTL of service contracts under the Waiver Program. (Compl. ¶ 21.) Specifically, Plaintiff alleges that ABH passed along discriminatory client requests, *e.g.*, a client request that the service provider not be African-American, and that, when CTL refused to honor such requests, ABH stopped referring prospective clients to CTL. (Compl. ¶¶ 21, 24–25). In the Complaint, CTL does not allege that the State Agency Defendants made discriminatory requests nor that either State Agency knew of any allegedly discriminatory requests made by ABH.

**Legal Standard**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . . It is to be presumed that a case lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). Indeed, "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868).

The appropriate analysis for a facial challenge to subject matter jurisdiction, like the one raised by the Defendants, is similar to that required under Rule 12(b)(6). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). The task of the district court is to determine whether, after accepting

as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Id.* at 56–57.

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

*Counts I, II, and IV*

The State Agency Defendants first assert that Counts I, II, and IV of the complaint are barred by the Eleventh Amendment, an argument conceded by CTL. (Pl.'s Opp'n Mem. at 1, ECF No. 37.) The Court agrees. *See, e.g.*, *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020) ("In our constitutional scheme, a federal court generally may not hear a suit brought by any person against a nonconsenting State."); *see also Coger v. Connecticut*, 309 F. Supp. 2d 274, 281 (D. Conn. 2004) (dismissing a Section 1981 claim and hypothetical Section 1983 claim while citing *Daisernia v.*

*State of New York*, 582 F. Supp. 792, 799 (N.D.N.Y. 1984) and *Quern v. Jordan*, 440 U.S. 332, 342 (1979)); *Chance v. DeFilippo*, 361 F. Supp. 2d 21, 23 (D. Conn. 2005) (dismissing a CUTPA claim while citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). Accordingly, Counts I, II, and IV are dismissed as against the State Agency Defendants, and the court does not further discuss these claims. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law, and, just as issues of fact, it must be decided after and not before the court has assumed jurisdiction over the controversy.").

### *Count III*

Count III, which alleges a violation of Title VI,[2] is not barred by the Eleventh Amendment, and the State Agency Defendants do not challenge the Court's subject matter jurisdiction to decide this claim. CTL alleges that the State Agency Defendants, as recipients of federal funding, are liable for ABH's discriminatory conduct, customs, and policies. Title VI, like Title IX, conditions the receipt of federal funding on a promise not to discriminate in what amounts to a contract between the Federal Government and the funding recipient. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). A substantive violation of Title VI occurs when (1) there is racial or other prohibited discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance. *Rafi v. Yale Univ. Sch. of Medicine*, No. 3:14-CV-01582 (VAB), 2017 WL 3205548, at *11 (D. Conn. July 27, 2017) (citing *Palmer v. Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013)) (quotation marks and alterations omitted); *see also Baker v. Board*

---

[2] The relevant statute provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

*of Regents of State of Kansas*, 991 F.2d 628, 631 (10th Cir. 1993) (adopting these two elements as those necessary to establish a Title VI cause of action).[3]

A recipient of federal funds is only liable under Title VI for intentional misconduct, however. *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001). Further, "the Supreme Court has held that an entity's liability [under Title VI] is limited to the entity's own misconduct, as it is under § 1983." *United States v. County of Maricopa*, 889 F.3d 648, 652 (9th Cir. 2018) (citing *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999) (finding that while a school board could not be held accountable for a student's misconduct, it could be held liable for its own deliberate indifference) and *Gebser*, 524 U.S. at 285 (concluding that a *respondeat superior* theory could not create liability)).[4]

Nevertheless, there are circumstances where a funding recipient may be found to have intentionally violated Title VI arising out of a third party's actions. *Zeno v. Pine Plains Cen. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012) (citations omitted). One such circumstance occurs when the funding recipient is deliberately indifferent to known acts of discrimination by the third party. *Id.* at 665. For a claim predicated on the deliberate indifference of the funding recipient, "[c]onstructive knowledge [of the alleged discriminatory acts] is not enough; only actual knowledge is a predicate to liability." *Id.* at 666 (citations omitted). A second circumstance arises when the funding recipient has an official policy authorizing the discriminatory actions. *County of Maricopa,* 889 F.3d at 652–53 (citing *Gebser*, 524 U.S. at 285). A third circumstance occurs when

---

[3] Both the State Agency Defendants and CTL discuss whether CTL has plausibly alleged that ABH is a "state actor," and they do so, it appears, in the context of challenging the adequacy of the pleading of all four counts of the Complaint. However, there is no requirement under Title VI that a defendant be a "state actor" as is required under Section 1981 and 1983, and the Court does not therefore address these arguments.

[4] Although *Davis* and *Gesber* are Title IX of the Education Amendments of 1972 cases, the Supreme Court has interpreted Title IX consistently with Title VI. *See Barnes v. Gorman*, 536 U.S. 181, 185–86 (2002). The Second Circuit has also relied on these two cases in the Title VI context. *Zeno v. Pine Plains Cen. Sch. Dist.*, 702 F.3d 655, 665 n.9 (2d Cir. 2012).

6

the defendant retaliates against another for engaging in a protected activity. *Palmer v. Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013).

Upon review of the Complaint, and construing the allegations in a light most favorable to sustaining the Plaintiff's claims, the Court concludes that CTL has failed to plead facts sufficient to show that the State Agency Defendants acted with deliberate indifference to ABH's discriminatory practices or that such practices were sanctioned by an official policy of the State Agency Defendants.[5]

First, the Complaint contains no factual allegations that could demonstrate or even support the inference that the State Agency Defendants had actual knowledge of ABH's alleged discriminatory conduct. *Zeno*, 702 F.3d at 666. Nowhere does the complaint plausibly allege that either CTL or ABH notified the State Agency Defendants of any discrimination claims or practices. And even if it could consider the information submitted in connection with ABH's motion to dismiss, the Court is not convinced that those materials—assuming they created a reasonable inference of actual knowledge—would create a reasonable inference that the State Agency Defendants were deliberately indifferent towards ABH's alleged conduct. *Cf. D.H. v. City of New York*, 309 F. Supp. 3d 52, 77–78 (S.D.N.Y. 2018) (finding that plaintiffs had not sufficiently plead deliberate indifference where the pleadings did not indicate that the funding recipient had failed to take appropriate remedial action upon gaining actual knowledge); *see also Zeno*, 702 F.3d at 666 (stating that a funding recipient's actions reflect deliberate indifference only when those actions are clearly unreasonable in light of known circumstances).

---

[5] The court notes as a preliminary matter that in its opposition to the motion to dismiss, CTL relies heavily upon ABH's motion to dismiss and the affidavit attached thereto. Therein, ABH avers that ABH relayed CTL's complaints about the discriminatory referrals to the State Agency Defendants and that the State Agency Defendants subsequently changed an informed consent waiver used to intake program participants. The Court, however, cannot rely on a ABH's submission in this 12(b)(6) context. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d. Cir. 2000).

CTL also failed to sufficiently allege that the State Agency Defendant's official policy contributed to the alleged discrimination. As the State Agency Defendants argue, the only paragraph in the Complaint that references an official policy is paragraph 31, which states "ABH's policy and practice of placing discriminatory referrals constitutes a governmental custom that caused discrimination against CTL." This statement does not implicate or even reference the State Agency Defendants, and, in any event, is merely a conclusory statement not entitled to the presumption of truth. *See Iqbal*, 559 U.S. at 678 (citing *Twombly*, 550 U.S. at 555)). In its opposition, CTL relies upon its allegations that that ABH is an agent operating under the supervision of the State Agency Defendants. But these allegations are insufficient to create a reasonable inference that it was the State Agency Defendants' official policy that resulted in the discrimination at issue. *See County of Maricopa*, 889 F.3d at 652 (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *see also Montero v. City of Yonkers*, 890 F.3d 386, 403–04 (2d Cir. 2018) ("[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (citations omitted). Indeed, the allegations in the complaint regarding the alleged discriminatory conduct at issue do not mention the State Agency Defendants at all. It thus bears repeating that the funding recipient may be held liable only for its own intentional conduct and that an agent's actions cannot form the basis of Title VI liability absent some malfeasance on the funding recipient's part. *See Sandoval*, 532 U.S. at 281 ("Title VI itself directly reach[es] only instances of intentional discrimination.") (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)); *Davis ex. rel.*, 526 U.S. at 643 ("[I]n *Gebser* we expressly rejected the use of agency principles in the Title IX context . . .") (citing *Gebser*, 524 U.S. at 283)).

Finally, to the extent that CTL's retaliation claim under Title VI is intended to extend to the State Agency Defendants,[6] the claim is also insufficiently supported. To state a claim for Title VI retaliation, a plaintiff must show: (1) participation in a protected activity, that was known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and the defendants' adverse action. *Palmer*, 918 F. Supp. at 199 (citing *Peters v. Jenney*, 327 F.3d 307, 318 (4th Cir. 2003)) (other citations omitted).

Here, the Complaint asserts only that ABH engaged in retaliatory conduct after CTL objected to and refused to participate in the discriminatory practices. (Compl. ¶¶ 24–26.) Because CTL has not sufficiently pleaded that the State Agency Defendants had actual knowledge of ABH's alleged discriminatory conduct, as discussed above, nor that the State Agency Defendants took any adverse actions toward CTL, a retaliation claim pursuant to Title VI likewise fails. *See Palmer*, 918 F. Supp. at 199.

**CONCLUSION**

For the reasons set forth above, the State Agency Defendants' motion to dismiss is GRANTED. The Dismissal of Count III is without prejudice to the filing of an Amended Complaint if Plaintiff believes it can cure the pleading deficiencies identified herein. The Court further finds that the State Agency Defendants' motion to stay discovery pending resolution of the instant motion to dismiss is MOOT.

---

[6] The State Agency Defendants moved to dismiss the Complaint against them in its entirety to include any arguable retaliation claim. In response, CTL did not advance any argument that the retaliation claim should not be dismissed. Notwithstanding, the Court addresses this claim because paragraphs 48 and 49 of the Complaint, in which the allegations of retaliation are made, refer generally to "Defendants."

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of March 2021.

                                               */s/ Kari A. Dooley*
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE